ORIGINAL

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
MS "TAGA BAY" GMBH & CO. CONTAINERSCHIFF KG, :

                              Plaintiff,    :

          -against-                         :   08 Civ. 8855 (LLS)

SA INDEPENDENT LINER SERVICE PTY LTD.,      :   OPINION AND ORDER
a/k/a "SAILS," and LONRHO PLC,
                                            :
                              Defendants.
                                            :
------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/27/09

Defendant Lonrho PLC moves to vacate the attachment pending against it, but temporarily stayed, on the ground that it is not the *alter* *ego* of defendant SAILS, a South African corporation claimed to be in default of its payment obligations under a maritime charter party. In short, Lonrho's position is that:

> SAILS is a South African based vessel operator. London-based Lonrho, listed on the London Stock Exchange ("LSE"), has a multitude of interests in Africa, including, among other things, equity investments in primary infrastructure, transportation services, hotels, and natural resources. A small part of its African investments is reflected in the fact that one of its subsidiaries, Lonrho Africa, owns 67% of SAILS's outstanding shares. Lonrho Africa first acquired a 45% shareholding stake in SAILS in July, 2007, and that share increased to 67% over the past year or so. Lonrho itself has no vessel-operating business of its own; its London-based directors, officers, and employees never managed any part of SAILS's day-to-day vessel-operating business; it has no direct ownership interest in SAILS; and none of Lonrho's other businesses are operated in concert with SAILS. Lonrho's indirect interest in SAILS (via Lonrho Africa) is but a small fraction of Lonrho's overall Africa-based businesses.

Scott Decl. Nov. 30, 2008, p. 2, ¶ 4.

Lonrho says, "Apart from the appointment of certain directors to SAILS' board typical with a majority shareholding, at all times, Lonrho and SAILS, were operated as entirely separate entities", Dec. 1, 2008 Memo, p. 2.

The Amended Verified Complaint, on the other hand, alleges that Lonrho is the <u>alter ego</u> of SAILS (¶¶ 20-33):

> 20. Upon information and belief, Defendant LONRHO is the alter ego of Defendant SAILS because it dominates and disregards Defendant SAILS' corporate forms to the extent it is actually carrying on the business and operations of Defendant SAILS as if the same was its own or vice versa.
>
> 21. Upon information and belief, Defendant LONRHO owns 67% of Defendant SAILS.
>
> 22. Upon information and belief, Defendant LONRHO initiated the liquidation of Defendant SAILS on or about October 15, 2008.
>
> 23. Upon information and belief, Defendant SAILS is a shell corporations [sic] through which Defendant LONRHO conducts its business or vice versa.
>
> 24. Upon information and belief, Defendant SAILS has no separate and independent identity from Defendant LONRHO.
>
> 25. Upon information and belief, Defendant SAILS is used by Defendant LONRHO as a pass through entity in an attempt to insulate itself from creditors relating to its commercial obligations and in particular, its vessel charters, or vice versa.
>
> 26. In the alternative, Defendant LONRHO utilizes Defendant SAILS as a paying or receiving agents [sic] or pass through entities in an attempt to insulate itself from creditors relating to its commercial obligations and in particular, the chartering of the vessel.
>
> 27. It is not the general practice in the maritime community, nor in any other business, for independent companies to make or receive large payments on behalf of other "independent" companies.
>
> 28. Payments sent or received on behalf of another "independent" company are suggestive of a relationship that is not arms length.

29. Upon information and belief, Defendant SAILS made and/or makes payments to Defendant LONRHO's creditors when there is no contractual obligation to do so.

30. Upon information and belief, Defendant SAILS made payments on behalf of Defendant LONRHO with respect to the subject charter party when it had no contractual obligation to do so, but rather the obligation was owed by Defendant LONRHO.

31. Defendant SAILS paid and received funds under the charter on behalf of Defendant LONRHO, or vice versa.

32. Correspondence between the parties during the pendency of the charter party referred to the payment beneficiaries for Defendant LONRHO as Defendant SAILS, or vice versa.

33. Employees of LONRHO conducted substantive discussions in respect to the charter with SAILS.

Those allegations find support in the December 18, 2008 Declaration of Ian Wicks. He was Managing Director of SAILS until his suspension by Lonrho, and thus speaks from personal knowledge, under penalties of perjury (his Dec. 18, 2008 Decl. ¶¶ 25-33):

25. SAILS was solely financed by LONRHO in order to allow SAILS to continue to operate.

26. SAILS routinely requested funds from LONRHO in the amounts necessary to make payments of SAILS's debts.

27. LONRHO made payments to SAILS to allow SAILS to pay for bunkers, hire, container leasing, and other business expenses.

28. Payments were only made by LONRHO to SAILS when SAILS requested payment in specific amounts to allow SAILS to make payments in satisfaction of specific debts payable by SAILS.

29. Had LONRHO not made these payments to SAILS to allow it to continue functioning, SAILS would certainly have closed earlier.

30. SAILS was inadequately capitalized under LONRHO's ownership and it could not have continued to operate without LONRHO making payments to SAILS in amounts sufficient for SAILS to pay its creditors.

31. When LONRHO decided that they would not longer make payments to SAILS to finance its operations the company was closed almost immediately.

32. At the direction of LONRHO, SAILS was liquidated.

33. Mr. Rob Scott, a LONRHO employee who was the country manager for Africa, ordered the suspension of SAILS.

A later declaration by Mr. Scott elaborates on Lonrho's suspension of Mr. Wicks, and his replacement by an employee of Lonrho, Peter Albeck, who Scott concedes managed the day-to-day operations of SAILS thereafter (Scott Decl. Dec. 26, 2008, ¶¶ 13, 14, pp. 4-5):

> 13. In order to address these concerns, the SAILS Board resolved to appoint Mr. Peter Albeck, then a Lonrho employee, to monitor SAILS' performance, and to report directly to the Board of SAILS' ultimate parent, Lonrho. (Id. at pp. 180-81.) It would have been impossible for Lonrho, as owner, not to take corrective action to address SAILS's ongoing operational losses. At the same time, the SAILS Board of Directors expressly directed that "the day-to-day buck stops with" Mr. Wicks, then SAILS Managing Director, as well as Board Member. (Id. p. 182.)
>
> 14. Following this Board directive, SAILS' operations failed to improve. On June 3, 2008, representatives of SAILS management, its Board of Directors and representatives of Lonrho, as majority shareholder, convened an emergency meeting of senior management with Mr. Wicks to assess SAILS's deteriorating financial condition. At that management meeting, Mr. Wicks was suspended as Managing Director, and Mr. Peter Albeck was appointed interim Managing Director pending the outcome of an investigation of SAILS's overall management and financial condition. I was appointed to assist in the transition, and conduct the investigation on behalf of the Board. Following his appointment as SAILS interim Managing Director by the SAILS Board, Mr. Albeck did--of course--manage the day-to-day operations of SAILS, as his responsibilities required.

Interesting aspects of Mr. Scott's account are that Mr. Albeck was an employee of Lonrho, not SAILS, so Lonrho was entirely

4

managing the day-to-day operations of SAILS. That is domination and control. Further, in the whole discussion there is no mention of Lonrho Africa, the record shareholder of 67% of SAILS. Its separate corporate existence is ignored.

Further evidence of Lonrho's control is found in the minutes of the April 24, 2008 Minutes of SAILS' Board Meeting, ¶ 4.1 at p. 180 of the exhibits to Exhibit A, Decl. of Krish Reddy dated Dec. 18, 2008. "GW" is Geoffrey White, a SAILS director; "PA" is Peter Albeck of Lonrho, and "IW" is Ian Wicks, then managing director of SAILS:

> GW then addressed the animosity between PA and IW. He stated that the Board needed to make it very clear what PA's mandate was. GW stated that the initial investment by Lonrho in the Company was $6 million. GW went on to state that "SAILS is a Lonrho company through and through". PA was appointed to report back to the Lonrho Board on the progress and development of the Company. GW stated that the Lonrho Board required PA to have access to all information required. He further stated that given past lack of information the Lonrho Board required PA to oversee and be directly involved in the running of the Company. GW stated that PA needs to be involved and oversee decisions as they are made. He went on to state that PA, on behalf of Lonrho, needs to approve every major decision the Company makes, especially as regards strategy. GW went to advise IW that it was in his own best interests to work with PA, as far as the Board was concerned, if PA had concerns regarding the Company, Lonrho would be disinclined to invest further funds in the Company.

Thereafter Mr. Albeck was not only "directly involved in the running of the Company", but wrote letters on its behalf, identifying himself as General Manager for Ports and Shipping of Lonrho London. See ¶ 19 of, and Ex. F to Lübbers decl. dtd Dec. 11, 2008.

5

\*   \*   \*

This evidence is recited, not as part of "a fact-intensive inquiry into the substantiality and nature" of the <u>alter ego</u> claim, a type of inquiry decried in <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 447 (2nd Cir. 2006), but only as support for the conclusion that there is a <u>prima facie</u> basis[*] for plaintiff's claim against Lonrho, sufficient to justify the attachment. <u>See</u> <u>Williamson v. Recovery Ltd. Partnership</u>, 542 F.3d 43, 50-53 (2nd Cir. 2008).

### Conclusion

Lonrho's motion to vacate the attachment as to it is denied. Regardless of how the <u>alter ego</u> issue may ultimately be determined by the arbitrators, plaintiff states a <u>prima facie</u> case sufficient to support the attachment. The stay of its enforcement is lifted.

So ordered.

DATED:  New York, New York
        February 27, 2009

*[signature: Louis L. Stanton]*
LOUIS L. STANTON
U. S. D. J.

---

[*] "At first sight; on first appearance but subject to further evidence or information", Black's Law Dictionary, p. 1228 8th ed. 2004).