UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
MS "TAGA BAY" GMBH & CO. CONTAINERSCHIFF KG,

                              Plaintiff,

          -against-                      08 Civ. 8855 (LLS)

SA INDEPENDENT LINER SERVICES PTY LTD.,    **OPINION and ORDER**
a/k/a "SAILS," and LONRHO PLC,

                              Defendants.
--------------------------------------------X

On the original verified complaint against defendant SAILS, a South Africa-based vessel operator, plaintiff on October 16, 2008 obtained an order for maritime attachment of up to $885,157.56 in SAILS' property, in aid of arbitration of plaintiff's claim that SAILS is in default of its payment obligations under a maritime charter party.

On November 7, 2008, plaintiff filed an amended verified complaint adding defendant Lonrho PLC, the London-based grandparent of SAILS, on the claim that SAILS is Lonrho PLC's alter ego, and obtained an order in this case for attachment of up to $2,515,228.98 in SAILS' and Lonrho PLC's property.

On May 19, 2009, that order was vacated as to Lonrho PLC because none of its property had been attached, and since the same appeared to be true as to SAILS' property, plaintiff was ordered to show cause by June 26, 2009 why this suit for maritime attachment should not be dismissed.

Plaintiff has responded to that by an ex parte letter admitting that "no funds have been attached to date" (Pl.'s June 23, 2009 Ltr. at p. 4), and seeking, among other things, leave to amend its complaint further by adding as defendants eleven[1] Lonrho PLC affiliates, on allegations that they and SAILS are

---

[1]    Throughout this Opinion, each Lonrho PLC affiliate is treated as one with its alleged aliases.

Lonrho PLC's alter egos, and attaching up to $2,515,228.98 in SAILS' and those eleven affiliates' property.

1.

Because it does not appear that allowing plaintiff to file its second amended verified complaint ("complaint" or "SAVC") would be futile, leave to do so is granted pursuant to Fed. R. Civ. P. 15(a)(2) (Except in circumstances not applicable here, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.").

2.

Plaintiff argues that attachment of property belonging to newly-added defendant Lonrho Africa (Holdings) Limited, a wholly owned subsidiary of Lonrho PLC and the parent of SAILS, is warranted by its claim that SAILS and Lonrho Africa are alter egos of Lonrho PLC.

Based on the same claim, principally supported by allegations predicated on submissions in the record of this case, Judge Swain in Wilhelmsen Premier Marine Fuels AS v. SA Independent Liner Service (PTY) Ltd. a/k/a "SAILS," Lonrho PLC, and Lonrho Africa Holdings Ltd., No. 08 Civ. 8878 (LTS) (S.D.N.Y.) on January 6, 2009 allowed the maritime attachment by Wilhelmsen of SAILS' and Lonrho Africa's property, to obtain security for Wilhelmsen's claim that SAILS breached a maritime bunkering services contract. The allegations relied upon by Judge Swain (and previously by me with respect to SAILS and Lonrho PLC) sufficiently demonstrate that SAILS and Lonrho Africa are alter egos of Lonrho PLC for purposes of an attachment, and an order will be issued separately for attachment of up to $2,515,228.98 in SAILS' and Lonrho Africa's property.

3.

However, the ex parte application is denied to the extent it seeks permission to attach property of the ten other newly added defendants:

- Luba Freeport Limited, the operator of an oil services terminal in Equatorial Guinea with an address in the Island of Jersey;

- Six Lonrho PLC affiliates with an address in the British Virgin Islands, who run the "Fly 540" airline providing transportation to and within Africa;

- Lonrho Agribusiness (BVI) Limited, a seller of fresh African produce, with an address in the British Virgin Islands;

- Lonagro Equipamentos Agricolas LDA, a distributor of John Deere tractors and other agricultural equipment in Angola; and

- Lonzim PLC, a London AIM stock exchange listed vehicle for investing in economic recovery opportunities in Zimbabwe and Mozambique's Beira corridor.

Plaintiff claims that it should be allowed to attach the properties of those ten entities because they and South African vessel operator SAILS are all alter egos of Lonrho PLC, which maintains a portfolio of investments in companies (such as those ten) engaged in commerce in Africa.

None of the complaint's legal conclusions,[2] allegations made on "information and belief" without disclosure of the basis for believing they should apply to those ten defendants,[3] or

---

[2]   See, e.g., SAVC ¶ 27 ("Lonrho Plc controls, dominates, and disregards the corporate forms of [all the other defendants] such that they are all alter egos of Lonrho Plc.").

[3]   See, e.g., SAVC ¶ 60 ("Upon information and belief, Defendants made payments on behalf of Defendant SAILS with respect to the subject charter party when it [sic] had no contractual obligation to do so, but rather the obligation was owed by Defendant SAILS.").

conclusory characterizations of its exhibits,[4] furnishes the factual showing necessary to justify attachment of their property.

The only factual assertions upon which the alter ego theory as to those ten defendants rests[5] are the allegations and exhibits showing that Lonrho PLC has the power to govern them by majority stock ownership or arrangements with other investors;  that they and Lonrho PLC have overlapping directors;  that one of the ten has the same address as Lonrho PLC;  and that Lonrho PLC's wholly owned subsidiary Lonrho Africa "holds the operating bank accounts for the Group" (Lonrho PLC's 2008 Annual Report at p. 65)(SAVC's Ex. A).

Those facts show little more than that Lonrho PLC has substantial investments in those ten defendants which are specific ventures, with separate business purposes.  The July 24, 2008 Collins Stewart Stock Research Report on Lonrho PLC previously submitted by plaintiff as Exhibit A to its attorney's December 18, 2008 Affirmation states that:

- Lonrho PLC's "Subsidiaries have their own management teams, each specific to the sector of the subsidiary" (Collins Stewart Stock Research Report at p. 6);

- Lonrho PLC's corporate family is structured into operating divisions with "Strong, experienced management at [the] subsidiary level" (id. at p. 4);

- With respect to defendant Luba Freeport Limited, "Day to day management of the port is undertaken by a

---

[4]    See, e.g., SAVC ¶ 25 ("Lonrho Plc's 2008 Annual Report [SAVC's Ex. A] indicates the extent of shared ownership, control, domination, and assets which are moved in and between the subsidiary or controlled entities, a group which includes all [the other] named Defendants herein, without regard for separate corporate formalities.").

[5]    That Lonrho PLC's 2008 Annual Report (SAVC's Ex. A) presents "consolidated financial statements" which "incorporate the financial statements of Lonrho Plc and entities controlled by Lonrho Plc" (Annual Report at p. 26) in no way proves an alter ego relationship.   The Annual Report (at p. 24) states that "the consolidated financial statements have been prepared in accordance with International Financial Reporting Standards (IFRS)", and except in limited circumstances, "A parent entity must present consolidated financial statements in order to comply with IFRS", BARRY J. EPSTEIN AND EVA K. JERMAKOWICZ, WILEY IFRS 2007:  INTERPRETATION AND APPLICATION OF INTERNATIONAL FINANCIAL REPORTING STANDARDS, CH. 11 (2007), available on LEXIS.

qualified expatriate team led by Howard McDowell, the Luba general manager" (<u>id.</u> at p. 7); and

• As to the Fly 540 airline defendants, "An ex-British Airways management team run the business" (<u>id.</u> at p. 12).

As Judge Lynch recently stated in <u>Kola Shipping Ltd. v. Shakti Bhog Foods Ltd.</u>, No. 08 Civ. 8817 (GEL), 2009 WL 464202, at *2 (S.D.N.Y. Feb. 24, 2009):

> However liberal the attachment procedures under Rule B may be, courts should not indiscriminately allow attachment of the property of every affiliate of a maritime defendant simply upon an allegation that such entity is associated with the proper defendant. Rather, it is prudent to require a showing that there is at least some basis for believing that the attachment will reach only those additional entities that are in fact alter egos of the maritime defendant.

To make the requisite showing in a case such as this, where there is no claim of fraud, the facts must demonstrate that it is likely that one corporation "so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." <u>Status Int'l S.A. v. M & D Maritime Ltd.</u>, 994 F. Supp. 182, 186 (S.D.N.Y. 1998), citing <u>Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.</u>, 782 F.2d 329, 342 (2d Cir. 1986) and <u>Kirno Hill Corp. v. Holt</u>, 618 F.2d 982, 984-85 (2d Cir. 1980). Showing that one corporation has the power to control another is not enough. <u>See</u> <u>Williams v. McAllister Bros. Inc.</u>, 534 F.2d 19, 21 (2d Cir. 1976). Complete stock ownership does not alone warrant the disregard of distinct corporate entities. <u>See</u> <u>id.</u> "'Actual domination, rather than the opportunity to exercise control, must be shown.'" <u>De Jesus v. Sears, Roebuck & Co., Inc.</u>, 87 F.3d 65, 69-70 (2d Cir. 1996)(quoting <u>McAllister Bros.</u>, 534 F.2d at 21).

On this record, one cannot conclude that Lonrho PLC likely dominates those ten defendants to the degree required to justify attaching their property, to secure a claim for breach of a contract to which none of them is a party, cf. Williamson v. Recovery Ltd. Partnership, No. 06 Civ. 5724 (LTS), 2007 WL 102089, at *3-4 (S.D.N.Y. Jan. 16, 2007), aff'd, 542 F.3d 43, 53 (2d Cir. 2008), in an industry in which none of them participate.

That they and Lonrho PLC allegedly have overlapping directors, and the statement in Lonrho PLC's 2008 Annual Report (at p. 65)(SAVC's Ex. A) that Lonrho Africa "holds the operating bank accounts for the Group", do not show domination. "Parents and subsidiaries frequently have overlapping boards of directors while maintaining separate business operations", Fletcher v. Atex, Inc., 68 F.3d 1451, 1460 (2d Cir. 1995), and it is probable that, as stated in the Collins Stewart Report quoted above, those ten defendants are treated as independent businesses, with separate bank accounts, which are held by Lonrho Africa solely for ministerial purposes, cf. Fletcher, 68 F.3d at 1459 (no alter ego liability where subsidiary participated in parent's centralized cash management system under which all domestic subsidiaries had separate bank accounts), citing Japan Petrol. Co. (Nigeria) v. Ashland Oil Inc., 456 F. Supp. 831, 846 (D.Del. 1978)(segregation of subsidiary's accounts within parent's cash management system was "a function of administrative convenience and economy, rather than a manifestation of control").

4.

Plaintiff requests that this ex parte "application and related filings be kept under seal" (Pl.'s June 23, 2009 Ltr. at p. 1), since otherwise Lonrho PLC "may be able to avoid having

funds moved to or from any of the named Defendants" to evade attachment (id. at p. 5).

The risk that a defendant "may be able" to avoid making attachable funds transfers is present in all maritime attachment suits, which are routinely filed publicly. More is required to overcome "the strong weight to be accorded the public right of access to judicial documents" such as the materials plaintiff seeks to have sealed. United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995).

The request for sealing of this ex parte application and related filings is denied.

CONCLUSION

For the reasons set forth above, the issues raised by plaintiff's June 23, 2009 ex parte letter application are disposed of as follows:

(1) Plaintiff may further amend its complaint and file its second amended verified complaint;

(2) The ex parte application is granted insofar as it seeks an order, which will be issued separately, for attachment of up to $2,515,228.98 in the property of defendant SAILS and newly-added defendant Lonrho Africa;

(3) The ex parte application is denied to the extent it seeks leave to attach the other newly-added defendants' property; and

(4) The request for sealing of the ex parte application and related filings is denied.

So Ordered.

Dated:    New York, NY
          July 24, 2009

                              *Louis L. Stanton*
                              LOUIS L. STANTON
                              U.S.D.J.